Case number 19-4214. Sherryl Darby v. Childvine Inc. at all. Arguments not to exceed 15 minutes per side. Mr. Butler, you may proceed for the appellant. Thank you. Good morning. Good morning, your honors. My name is Brian Butler and I represent Sherryl Darby. May it please the court. This case really presents two issues. The first is a major procedure irregularity which was that the motion to dismiss that was filed and ultimately granted was based almost entirely on facts that were not in the pleadings and were not in the record in any manner. There were a lot of statements made by defense counsel about what the true facts were in his view and they were not supported by affidavit, they were not supported by medical records, and they were certainly not supported by the complaint. This was a motion to dismiss that was ruled upon by the district court, is that correct? That is correct. It wasn't a motion for the district judge went beyond the scope of his authority in dealing with a motion to dismiss by considering facts that might come out in summary judgment proceedings, but maybe not. Okay, basically that's a summary of the argument on procedural. That's correct, your honor, and we also moved for leave to amend the complaint to clarify it, to you know, put forth facts or at least allegations in the complaint that more aligned with some of the facts that came out in the medical records as we received them, but as the case stands currently the amended complaint, the first amended complaint, contains the only facts the court was to consider and instead the court considered the statements of counsel and adopted them just not supported by the record. But regardless of that procedural irregularity, there is the underlying issue here, which is a matter of first impression in any, as far as we can tell, United States court, which is does a genetic mutation, can that constitute a disability as defined by statute? And the district court's decision did not directly apply the standard set forth in the statute. It also did not focus on the commandments in the Americans with Disabilities Amendments Act from 2008 that Congress... Mr. Butler, can I kind of skip to the impairment that Ms. Darby had was substantially limiting her normal cell growth? Sure. Well, in the complaint, the allegation is that she was suffering from breast cancer, so... Sure, but that the district court allowed your amendment, which removed that, right? Your amendment was, you had eight things, I think you listed, if I remember correctly, and it removed that because she actually wasn't suffering from breast cancer, and we know that because of your amended allegation. So skip that one and just tell me... Okay. Yeah, go ahead. Sure. Well, the abnormal cell growth was evidenced first by a pap smear that showed abnormal epithelial cells. So... Sure, but you could have that independent of BCRA1, right? That is absolutely true. That could be independent of BRCA1, but... So all I'm asking, and I'm sorry if I'm being unclear, is what evidence in your complaint is there that the BCRA1 caused it? Does that make sense? Sure. Well, again, and I understand your point that the district court allowed, as it said, allowed an amendment, but we did not put forth an amended complaint. What was put forth was essentially a summary of a request to amend and the basis to amend. So there is... No, but you put forth eight points. Is there anything that you didn't put forth that you intended to? You put forth eight points. In their reply brief below, they said, it's okay. And then the district court said, I'll just accept it as functionally amended, which happens all the time for purposes of a motion to dismiss. As far as what points would have been in an amended complaint, it would have been a little more developed as far as the argument. But I don't know that there's any way any person could say directly and without equivocation that these abnormal cells in her body were specifically caused by or because of the gene mutation. But medical science, and that, as we alleged, is that the gene mutation prevents the body from correcting these abnormal cells. So it is likely impossible for anyone to say without any, you know, directly that these particular cells exist solely because of and would not exist absent the BRCA1 mutation. But we know that the destroy them. And that is the physical impairment. So your argument, just to boil it down to a nutshell, is that BRCA1 or BCRA1 limits normal cell growth. Am I saying that? And the reason it limits it is it doesn't get rid of the problematic cells, just to say it in a simple way. Correct. It does not repair damaged DNA in cells that start to grow abnormally. Okay. Well, that's actually, that's admission number five of your proposed admission, is it not? It is. That the BRCIA gene is an impairment that substantially limits normal cell growth. That's what you alleged. I guess maybe the issue is under Trombley, whether there's facts to support that allegation. But I mean, the procedural posture here is so odd that we don't actually have the complaint that might have more of the factual basis to support the conclusions in the admissions. And the judge was accepting the admissions as true, I think, on the basis of ruling on the motion to dismiss. So I don't think he... Anyway, I understand you've made the allegation anyway. Well, yeah. And your honor, as it pertains to the motion to dismiss standard set forth by Trombley and other cases, all inferences have to be drawn in favor of the plaintiff. And to infer that there's no connection between the abnormal cells that were already detected and the gene mutation is to infer, draw inferences against the plaintiff. So that, in this case, at the motion to dismiss stage before discovery, before any medical testimony, to... Mr. Butler, can I interrupt you again? I'm sorry. But what Judge Griffin's saying is this could be considered under Trombley a conclusory allegation. And if it's a conclusory allegation, there has to be evidence underlying it. And so back to my original question, is there evidence in your complaint or would there have been had you been allowed to file a more fulsome complaint showing that BCRA1 causes this? I guess, Judge, I want to make sure I understand your question. Is your question whether or not BRCA1 can and generally does or it specifically caused the abnormal cells discovered in the pap smear? So no, not that it specifically caused them, because I think that's an unfair standard for you. At least it seems to me, as you've pointed out. But you say, I'm just, I think I'm quoting the BRCA1. I'm sorry, I've been saying it wrong. Gene is an impairment that substantially limits normal cell growth. Right, correct. That's I mean, one way to interpret that is it's a conclusory allegation. And so if it's a conclusory allegation, then there's no inference to draw. We look to see if there's any other evidence in your complaint supporting that allegation. And so is there any or is there some you would have put in, but for the unusual procedural posture, as Judge Griffin said? Sure. Well, Judge, I think the evidence that it, the allegation that it does affect normal cell growth, and then also the fact that there was indeed abnormal cell growth. So this isn't a theoretical exercise. It's not that it could, we know there was abnormal cell growth. But I guess I would add that it really doesn't matter if there had already been abnormal cells growing. We know that the condition causes abnormal cell growth, the actual mutation in the BRCA1 gene. And she was specifically tested and found to have the BRCA1 gene mutation. So Mr. Butler, you're saying we know it, but how do we know it? I mean, do you have an expert that would so testify? Is that what you're representing to us? About what the BRCA1 gene does? Yeah. We would offer medical testimony from her physician. And that's what his testimony would be? Yes, that the BRCA1 gene prohibits the body from addressing abnormal cell growth. Okay. All right. And the medical literature that we've examined, of course, we cited to the National Institute of Health. That is what the National Institute of Health says. I mean, I know we would present more at trial, but that is what the National Institute of Health says it is. But again, there was the one case we cited on HIV, and the court said that from the moment of infection, HIV is a disability. And that was under the more stringent standard. And what the court said was that you don't have to wait for the HIV to develop into AIDS. You don't have to wait for the common symptoms to come. It's the actual effect that the virus has at the cellular level from the beginning, not once the symptoms start to develop. The underlying interstitial cystitis was a disability irrespective of the frequency or duration of the bladder infections it caused. So the fact that the condition does cause these symptoms, it manifests in certain ways. The fact that the BRCA1 gene will or could manifest into cancerous cells or abnormal cell growth is enough because we know that the gene prohibits the body from handling abnormal cells. Now, whether or not she ultimately develops cancerous tumors in the future is really irrelevant. It's almost as if you have to wait, any employee would have to wait to a certain point, to a tipping point of a disease before being entitled to an abomination to receive treatment. And then what is that tipping point? When does a disease reach the point that it is severe enough that an employee can receive treatment? I submit that it's when a doctor says treatment is medically indicated. And that's what happened in this case. Robert, can I ask you about one procedural issue? Is the basis for your claim determination or are there more grievances you have with the way the company treated your client? It's the termination primarily. I mean, there is an allegation of some harassment along the way, but the primary claim is that she was terminated. And the facts as we see them are that she was terminated because of her absence. And I think that was one of the reasons given. So to be a little more precise, there's no claim that's based specifically on a failure to reasonably accommodate your client? Well, the termination and the accommodation are one and the same because the requested accommodation was time off to undergo treatment and she was terminated as a result of taking time off to go undergo treatment. Therefore, she was denied the time off. Your complaint at paragraph 16 says that the company approved her use of vacation and sick leave for her surgery. Yes, initially it did. But then it essentially removed that accommodation, took it away when it terminated her for taking the very leave that it had initially approved. Mr. Butler, I think the genesis of the procedural problem in this case started with the complaint inaccurately alleging that she's suffered from breast cancer. How did that misrepresentation come about? Judge, that's a hard question to answer because we're dealing with a young woman. She was 27 years old and she was a single mother. And she went to a doctor who told her she had these conditions and told her she needed to have a hysterectomy and a double mastectomy. You know, in that circumstance, I think it's hard to fault Ms. Darby for perhaps misunderstanding her condition. But I also don't think it's fair to exactly say she did not have cancer. We know she had abnormal cells growing in her body. And that cancer at the end of the day is abnormal cell growth. Now, when we often think of cancer, we think of tumors. That is, as it is, abnormal cells come together and form tumors. But, you know, cancer is a very general term that is used to describe a series of conditions that at the end of the day are abnormal growing cells. Okay. So, I mean, did you not review her medical records before you drafted and filed the complaint? We did not have her medical records at the time the complaint was filed. No. She came and, you know, it was, you know, admittedly, when someone tells me she has breast cancer and has had a double mastectomy, there wasn't a whole lot of question in my mind about what the facts were. All right. You've got four minutes to rebuttal. You can use it now or you can save it. I'll save it. Thank you. Okay. Any further questions for Mr. Butler at this point? Judge Sipar? Judge Radler? All right. Okay. You'll have your four minutes for rebuttal. Thank you. Let's hear from the defendants. Thank you, Your Honor. May it please the court. I'm Robert Todd. I represent the appellees, Childvine, Samantha Dosey, and Tyler Mayhew. I think the court has a good grasp of the real two issues of this case. The first being that the original complaint was misleading to the court alleging she had cancer. You know, this was discovered through costly discovery and to avoid more costly discovery, the court held an emergency hearing and basically told defendants to renew their motion to dismiss based on her new theory of recovery, which she admitted at that hearing. The defendants or the appellant basically functionally amended her complaint. I mean, she listed out bullet points. Here's what the amended complaint is going to state, and the court relied on those, accepted them, and put it in the court's opinion verbatim, allowing her to amend the complaint. When one bullet points what the amendment is going to be, I just don't see where they weren't functionally allowed to amend the complaint, and I think that the court relying on those, taking those allegations as fact, was allowed to proceed with 12 v. 6 without going outside of the four corners of the complaint. Okay, do you admit those facts then, those eight representations, so you don't contest that those are factually based, those actually conclusions, I guess? Well, we would, we take those allegations as being put forth by the court. However, we don't admit the fact that this BRCA1 mutation has, does not allow normal cell growth. It actually has nothing to do with normal cell growth. Okay, now isn't that a factual issue, and isn't that more appropriate for summary judgment rather than motion to dismiss? No, I think the literature is pretty clear. Well, first of all, with the BRCA mutation... Wait, wait, Mr. Todd, Judge Griffin just asked you, to me, a perfect question. If you're referring to the literature, that seems like summary judgment material. Why would a court, considering a complaint in a motion to dismiss, look to the as part of the response? But that's irrelevant. I thought what you stipulated to was the eight points in your reply brief, and then that's what the court accepted. And so it doesn't matter if a plaintiff comes along in a response to a motion to dismiss and provides a whole host of things. You would be screaming from the top of the mountain if that supported denying your motion to dismiss because he didn't include it in the complaint, or she didn't include it in the complaint. Explain that to me. Sure. Well, the main thing with the complaint is, and as counsel has admitted, there's no way to tell that this has manifested into the disease of cancer or will ever manifest. And that's pretty clear. But you agree that... Counsel, you agree abnormal cell growth is a major life activity. That is in the statute, abnormal cell growth. But cancer is irrelevant. Well, I guess the question is, is all abnormal cell growth. If somebody has a skin tag on their shoulder, that's abnormal cell growth. Are they now disabled for purposes of the ADA? Or if someone has a benign cyst that has nothing in their epithelial cells that really has no function and does not hurt any bodily functions, it's just a growth that is benign, that's abnormal cell growth. But is that person now disabled? And we don't believe they are. And there's no way... Don't you have to add to that, don't you have to add to that, to that factual mix, a precancerous growth for which a doctor has recommended a major medical procedure? Correct. There's nothing to... Well, first of all, a precancerous growth, I think that's a misnomer because there is not a allegation that there was a precancer or a precancerous growth. There was just an abnormality in an epithelial cell, and the doctor recommended based on that, that she get the genetic testing. And had the double disectomy. Correct. But a lot of parties, I mean, it's a lot of parties who have a BRCA1 mutation, elect for the risk reduction surgery of a double mastectomy. For instance, I can think of Hollywood stars that have had this exact diagnosis and did the exact procedure. But it doesn't seem like women go around looking for double mastectomies, Council. It seems to me this is an extremely invasive procedure that a woman has because of the substantial risk that BRCA1 will result in cancer. Yeah. By the time that she's 80, there's a substantial risk that she will sometime during her lifetime develop cancer. But the question is, does she have cancer now? Will this ever lead to cancer? There's no way telling. There's probability. But there's also a significant number of women who have this who never develop cancer and live healthy lives. But let me ask you, let me go back to the question I asked, which is you agree that Congress has defined a major life activity as normal cell and the plaintiff alleged that BRCA1 limits, substantially limits normal cell growth. Why isn't that sufficient for motion to dismiss purposes? You might be right at summary judgment. You might be right about the literature, but what I want to understand is why isn't that sufficient? The, the, the, the normal, the, it's not that in some cases, the BRCA1 limits normal cell growth. It just has nothing to do with normal cell growth. The, but now we're looking at the science and that's, that isn't in front of us. What's in front of us is the science. And the science is the allegation. Yeah, but the, if the allegation is so far against the scientific consistence of, and the, the, not just the scientific consensus, but then you should have moved for summary counsel, then you should have moved for summary judgment. It seems to me, you're asking us to look behind the allegations of things outside the complaint. No, no, I'm just, what, what we're asking and, and what, whether the, the court, you know, effectively converted this to a motion for summary judgment. What the, I mean, a fact, just because it's stated in the complaint, if it goes against the common knowledge and reason, you know, if, if, if the, the fact that they put in the complaint that the sky is red, it doesn't, it doesn't hand. But that, that's, that's something we are know. This isn't common knowledge and reason, but it's common knowledge among functional. It's, it's, it's basic. It's, it's, it's the same thing. It's a fact of how this thing works. The BRCA one creates a protein and that protein, uh, potential being DNA damage, but there's, there's no, there's no scientific research that, that says that this BRCA attacks normal cells or normal cells will have anything to do with this BRCA. Let me take it a different way. And then I'll be quiet and I'm sorry to keep interrupting you assume that everyone would be our CA one mutation has abnormal cell growth to the extent that their DNA doesn't get repaired properly. Do you concede that if that, if we accept that, that she qualifies as disabled? So let me repeat your question just so I make sure I want you to assume the science, your discounting, or that you're saying doesn't exist. So you have to assume for the purposes of my question, that BRCA one mutation leads to abnormal cell growth or doesn't repair substantially limits, normal cell growth. However you want to say, does it qualify? Does she then qualify as being disabled? If that allegation is true, if a hundred percent of people who had the BRCA one mutation absolutely had normal, abnormal cell growth, which, uh, basically you could track that transitioned into, uh, some type of cancer or a limit of a major bodily function, then yes, I would agree, but that's published circuit cases that sort of take this issue, take this issue on squarely. Oh, correct. There's, uh, you know, I've, I've searched all 50 states, state and federal cases, trying to find anything, um, that anything close to this. And it's a matter of complete first impression. Um, nobody has no litigant has argued that a potential disease in the future is reason that they're disabled today. You know, the, the BRCA one, isn't the only, the only game in town. If you just put the converse to that as no court has squarely rejected this theory either. Correct. As far as I know, nobody's, nobody's brought the argument. And so, you know, some of the other questions probe, you're asking us to throw it out too, at the pleading stage where, uh, at least there's at least dispute amongst the parties, what the medical evidence shows. Um, we have a pretty invasive procedure prescribed here as a result of this condition. And, uh, it does seem like perhaps you would pretty easily prevail on summary judgment if you're right about the medical evidence, but, um, you know, given, given the sort of broad definition that Congress has included along with the implementing regulations of the ADA couple with the lack of case law, sort of foreclosing the theory or even addressing it, it seems like this case would be a good candidate for further development. I, I, the, at, at, at great expense to a, a, a mom and pop, uh, daycare facility that, that, um, was like, I mean, basically, you know, we were told she had cancer and then she switches to this. You've already done some discovery. I mean, is there a way to work with judge Barrett to streamline the discovery where you take on this sort of key medical issue first or exclusively? Um, I mean, there may be ways, maybe ways to tailor it. Perhaps the, I'm sorry, was there another question? No, uh, appellant sites, both Bragdon and Abbott and Roush for the proposition that, uh, miss, uh, the appellant that the appellant is in the same position, but Bragdon v. Abbott was where the person was, uh, diagnosed with HIV. And in that case, the Supreme court said in quote, the medical literature reveals that the disease, uh, follows a predictable unalterable course from infection to death. That's not the case here. Uh, there's an officer. What was the posture of that case when the Supreme court decided it? Uh, I believe it was summary judgment. Um, and then it also said that HIV had an immediate constant detrimental effect to the hem, hemic and lymphatic systems. The appellant in this case was born with this mutation. It's not like this mutation was, was something that she has developed over time or whatever. She was born with it. She spent the first part of her life with it without any incident. And a lot of ladies do not have any incidents either. And there's nothing, there's no allegation in the complaint that she was suffering from any manifestation of this, this disease. Um, there's that she had an F a abnormal epithelial cell, which many women have that are, that could or could not have been affected by this. And which prompted the BRCA test to be run in Roush. This court found that, uh, the claimant did not have kidney infection because the mere possibility that a kidney blockage will occur and that further surgery will be needed is not sufficient to establish her condition is substantially limited. That's the same case here. There's nothing to suggest that there's that, uh, the plaintiff appellant will ever have any more issues with this. There's nothing to, there's nothing to suggest that she absolutely will have cancer. There's nothing to suggest that, um, she absolutely will have abnormal cell growth and that abnormal cell growth will affect any of her major life activities, including her normal cells. It's she has an abnormal DNA structure in one of the affected areas, namely the breast, that they might one day not be corrected. And that's, that's, that would just open up the floodgates. I mean, people who have a DNA, uh, markers for all numbers of diseases that have very high probabilities of developing them in the future could then say that they're disabled, even though they not do not yet have the manifestation of the disease. Um, appellant posed amendments to her complaint. The court accepted those amendments and there's just no way that appellant is disabled under the ADA or Ohio law. No court, Ohio or other ways has ever fell, found a person to be disabled merely on their chance of future disability. As such, the court's decision should be affirmed. And, uh, if there's no further questions, uh, that's all I have. Yeah. Any further questions? Judge or judge? Right. All right. Thank you, Mr. Butler. You've got four minutes. Uh, rebuttal. Thank you. I'd like to address this issue of manifestation. It's simply not part of the statute, the statute and the regulations say a physical impairment that substantially limits a major bodily function, whether or not that, that, that life is just not part of the calculus. Uh, so let me ask, let me ask you a question that came that Mr. Todd was, uh, aiming at, which is if the BCR BRCA1, uh, gene mutation just creates a genetic predisposition to abnormal cell growth, is it substantially limiting a major life activity? Well, I think the, the answer to that is if, so if your question is the BRCA gene may or may not cause abnormal cell growth. Correct. It just creates a predisposition to it. Doesn't actually cause it. Then are, is there any substantial limit to a major life activity just from having the gene itself? From having the gene itself? No. But the question, the problem here is it's a gene mutation that according to the medical literature, as we would submit in the complaint. And as I believe the evidence would come forth at trial, it is a mutation that prevents your body from doing something. It is, it is the absence, your body lacks the ability to, to correct, uh, damaged genes. Now that may or may not manifest into cancer. You, your body may through other processes eliminate problematic genes, but the, the issue or problematic cells, but the issue here is the gene, the BRCA1 gene, which is supposed to serve that function because it's mutated cannot serve that function. Um, and this, this problem with, or this, this concern over people with any manner of, uh, genetic predispositions, uh, you know, flooding employers with ADA claims is, is really unfounded because at the end of the day, the ADA only provides protection in two circumstances. The condition rises to a level that a medically, there is medically necessary accommodation, in which case we know it has reached a level that it's there, there's a problem. And this isn't just someone with a predisposition who's otherwise healthy. Only the person with the predisposition who has the medical problem, uh, would, would be eligible for protection under the ADA. The person is fired because of having a genetic predisposition, which, um, would be covered under the ADA, but would also probably be covered under ERISA and a whole host of other laws. So there is no actual danger created by this thought that someone with a genetic, uh, condition or predisposition, uh, would, would, would cause problems globally. And, and, and I guess I would also, again, submit that this isn't a predisposition. This is an actual genetic mutation that according to the medical evidences, as we would allege in the complaint, and we anticipate we can prove it, um, you know, through litigation would, does inevitably cause these problems. Um, and you know, she had a medical manifestation. We know that because she had the abnormal cell growth is detected by the pap smear. That pap smear is what led the doctor to recommend the genetic testing. And the genetic testing came back showing she had this mutation. So obviously the doctor saw a connection between the abnormal cells and the BRCA1G mutation, sufficient to warrant, as the court noted, a very significant medical procedure. Okay. Uh, thank you, Mr. Butler. Any further questions? All right. Case will be submitted. Thank you for your arguments. Counsel. We're very helpful. Uh, may call the next case. Thank you.